**EVANS TEMPCON, INC., a Delaware corporation, Plaintiff,**

v.

**INDEX INDUSTRIES, INC., a Washington corporation, Defendant.**

**No. 1:89:cv:1037.**

United States District Court, W.D. Michigan.

July 9, 1990.

---

Robert E. Attmore, Evan L. Macfarlane, Martin W. Buschle, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for plaintiff Evans Tempcon, Inc.

Alan C. Bennett, Law, Weathers & Richardson, Grand Rapids, Mich., Gerald A. Troy, Troy, Dootson & Associates, P.S., Bellevue, Wash., for defendant Index Industries, Inc.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on defendant's "Motion to Dismiss or Transfer Presenting Defenses of Lack of Personal Jurisdiction over the Defendant and Improper Venue Under Rule 12(b)". Defendant makes its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 28 U.S.C. § 1391(a) and (c), and its motion to transfer pursuant to 28 U.S.C. § 1404(a) or 1406(a).

## FACTS

Plaintiff, Evans Tempcon, Inc. ("Evans"), is a Delaware corporation with its principal place of business in Western Michigan. Defendant, Index Industries, Inc. ("Index") is a Washington corporation. The jurisdiction of the Court is invoked on the basis of diversity of citizenship.

In November 1985, Evans met Index at a trade show in Chicago, Illinois. In February 1986, representatives of Evans visited with representatives of Index in Bellevue, Washington. Evans disclosed its intent at that time to purchase Index thermal switches imprinted with "Evans Tempcon" to be remarketed to Evans customers. A few weeks later, Evans mailed a written proposal of its product requirements to Index in Washington. In April 1986, it was understood that sales contracts between the parties would be initiated by Evans by its mailing Purchase Orders to Index in Washington, and Index would ship goods to Evans in Michigan. In May 1986, Index began manufacturing units for Evans, and shipping them from Washington to Michigan.

In July 1986, the president of Index, Mr. Richard Englund, visited Evans in Michigan to discuss various product engineering changes. It appears that the relationship between Evans and Index began to break down in the fall of 1986. Plaintiff alleges breach of the various individual purchase orders, breach of the general contract to supply plaintiff with a complete product line, and tortious interference with plaintiffs' business relations with its customers. Defendant has filed counterclaims alleging various breaches of contracts, defamation, conversion of advertising materials, and malicious prosecution. Defendant argues there is no basis for jurisdiction in Michigan because it has no place of business in Michigan, has never solicited business there, has no employees there, and is not licensed to do business in Michigan.

### *Standard*

In deciding a motion to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2), the Sixth Circuit has recognized a settled procedural scheme to guide trial courts. *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir.1989). The court may determine the motion on the basis of the submitted affidavits alone, it may permit discovery in aid of the motion, or it may conduct an evidentiary hearing, either pretrial or during trial, on the merits of the motion. *Id.* quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). Plaintiff always bears the burden of establishing that jurisdiction exists; however the weight of plaintiff's burden depends on whether the court chooses to rule on written submissions alone, or to hear evidence on the jurisdiction issue. If the written submissions raise disputed issues of fact or require determinations of credibility, the court may order a hearing. The plaintiff then must prove that jurisdiction exists by the same standard that would apply if the matter were deferred to trial: the preponderance of the evidence. *Serras*, 875 F.2d at 1214, citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980). If the court rules on written submissions alone, as I will in the instant case, it must "consider the pleadings and affidavits in

the light most favorable to the plaintiff." *Serras,* 875 F.2d at 1214. (citations omitted). Plaintiff, however, may not rest on his or her pleadings to answer affidavits submitted by the movant, but must set forth by affidavit or otherwise[,] ... specific facts showing that the court has jurisdiction. *Serras,* 875 F.2d at 1214. Plaintiff's burden, however, is merely that of making a *prima facie* showing that personal jurisdiction exists. If plaintiff meets that burden the motion to dismiss should be denied, "notwithstanding any controverting presentation by the moving party." *Serras,* 875 F.2d at 1214, quoting *Marine Midland Bank,* 664 F.2d at 904.

### Discussion

■ Because this is a diversity action, the Court must look to Michigan law to determine if personal jurisdiction exists. *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir.1972). Jurisdiction in Michigan is possible under two Michigan statutes, Mich.Comp.L. § 600.711 or Mich.Comp.L. § 600.715. Section 711 is Michigan's general jurisdiction statute and authorizes the exercise of jurisdiction over a foreign corporation that conducts a "continuous and systematic part of its general business within the state." Mich.Comp.L. § 600.711(3). By contrast, Mich.Comp.L. § 600.715(1) provides for the exercise of "limited personal jurisdiction" over a foreign corporation "transacting any business within the state." The exercise of jurisdiction under § 715(1) is limited to actions arising from the transaction of business within the state. In the instant case, on the facts given, limited personal jurisdiction as defined in § 715 is the only possible basis for the exercise of jurisdiction. Under Mich.Comp.L. § 600.715(1), a two-part analysis must be made to determine if personal jurisdiction exists. First, the statutory requirements must be met. If the statutory requirements are met, the Court must determine that the exercise of jurisdiction would not offend the due process requirements of the United States Constitution. In the case of *Lanier v. American Board of Endodontics,* 843 F.2d 901 (6th Cir.1988), the Sixth Circuit addressed the question of limited personal jurisdiction under Mich.Comp.L. § 600.715(1). In *Lanier,* the plaintiff, a Michigan dentist, had sought and was denied certification by the American Board of Endodontics, an Illinois corporation. The plaintiff brought a sex discrimination suit against the defendant in federal court in Michigan. The district court held that it did not have personal jurisdiction over the defendant. Plaintiff appealed and the Sixth Circuit disagreed and reversed the court's holding. The Appeals Court applied the two-part, statutory and due process, analysis, further dividing each step into two questions. Thus, under the heading of statutory requirements they considered two questions: (1) did "[t]he transaction of any business" occur in Michigan, and (2) did the cause of action "arise out of" business transacted in Michigan. *Lanier,* 843 F.2d at 905, 908. I will consider these questions before moving on to the due process analysis.

### I. Statutory Requirements

■ In *Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971), the Michigan Supreme Court construed the "transaction of any business" requirement as being satisfied by "the slightest act of business in Michigan." *Id.* 385 Mich. at 199 n. 2, 188 N.W.2d 623. This standard is easily met; it has led to the conclusion that the "only real limitation placed on this [long arm] statute is the due process clause...." *Kiefer v. May,* 46 Mich.App. 566, 571, 208 N.W.2d 539 (1973). It is clear that the shipping of goods into Michigan, and the communications which took place in Michigan during Mr. Englund's visit fulfill the § 600.715(1) requirement of the "slightest act of business."

■ However, the plaintiff must also meet the "arising out of" requirement under § 600.715(1). In *Lanier,* the Sixth Circuit detailed two similar tests which are used to determine whether the cause of action "arose out of" business transacted in Michigan. *In–Flight Devices Corp.,* 466 F.2d 220 (6th Cir.1972), a "made possible" test was applied which provided:

Both acts [breach of contract and tortious misconduct] and their consequences were made possible only by [defendant's] transaction of business with [plaintiff] ... Under the circumstances we believe that the cause of action for damage to business reputation grew directly from the transaction of business in Ohio. *Lanier*, 843 F.2d at 909.

The Sixth Circuit also noted the "in the wake of" test applied by the Seventh Circuit: "if the cause of action lies in the wake of the business transaction, it arises from it." *Id.*, citing *In re Oil Spill by Amoco Cadiz off Coast of France*, 699 F.2d 909 (7th Cir.1983). Without choosing between the two tests, the Sixth Circuit concluded that they both had been met by the facts in *Lanier*. The Court noted that the cause of action was "made possible" by and arose in "the wake of" the application process undertaken by plaintiff, much of which occurred in Michigan.

Defendant asserts that the cause of action did not arise out of business transacted in Michigan. However, it fails to provide any support for this statement. I believe that plaintiff's cause of action was made possible by, and arose in the wake of, the shipment, or lack thereof, of units into Michigan. Accordingly, both the "transaction of any business" and the "arising out of" requirements of Mich.Comp.L. § 600.-715(1) have been met.

## II.  Due Process Requirements

■ I next consider whether the constitutional due process requirements have also been met. The *Lanier* court defined these requirements as: (1) defendants purposefully availed themselves of the privilege of conducting activities in Michigan; and (2) the acts of the defendant or consequences caused by the defendant must have had a substantial enough connection with the forum to make exercise of jurisdiction over the defendant reasonable. *Lanier*, 843 F.2d at 909 (cites omitted). The

Court explained the "purposeful availment" test as necessary to provide the defendant with "fair warning" that its activities in a state may subject it to suit there. *Lanier*, 843 F.2d at 910, citing *Burger King v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). The Court noted:

By 'purposefully availing' itself of opportunities in the forum, such as by purposefully directing itself to forum residents, a defendant opens itself up to that forum's jurisdiction. [W]here the defendant 'deliberately' has engaged in significant activities within a State ... or has created 'continuing obligations,' between himself and residents of the forum ... he manifestly has availed himself ... and ... it is presumptively not unreasonable to require him to submit to ... litigation in that forum.... Physical presence of the defendant is irrelevant. 'So long as a commercial actor's efforts are purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.' *Lanier*, 843 F.2d at 910, quoting *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84.

Once purposeful availment is shown the defendant cannot defeat jurisdiction unless it presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Lanier*, 843 F.2d at 910, quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185.

Defendant argues that it did not purposefully avail itself of the privilege of transacting business in Michigan. It asserts that it did not advertise or initially solicit Evan's business in Michigan and that "any contacts with Michigan thereafter were merely incidental to the transaction, rather than being a 'purposeful availment' of the benefits and protection of the laws of the forum state."[1] Brief at 9. *Wesley v. H & D Wireless Ltd. Partnership*, 678 F.Supp.

---

1. Defendant asserts that all the purchase orders were "F.O.B. Shipping Point" and that after the goods left Washington all ownership, control and authority over the goods was in Evans. However, this is not accurate. At least five shipping orders, which defendant submitted, contain the notation "F.O.B. Coldwater", indicating that defendant shipped goods to plaintiff at its former plant in Coldwater, Michigan.

1540, 1542 (D.N.M.1987). Defendant also contends that it has no "substantial connection" with Michigan, citing to *Asahi Metal Industry, Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) in which the Supreme Court noted:

> The 'substantial connection' (cites omitted) between the defendant and the forum state necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state.* (cites omitted). The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state ... [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state. (Emphasis in original).

Plaintiff submits that defendant's contacts with Michigan in connection with this matter were more than ample to support long-arm personal jurisdiction over defendants. It submits that defendant knew it was dealing with a corporation with its principal place of business in Michigan, and accepted instructions and payment from Michigan, shipped goods into Michigan, maintained telephone contacts and correspondence with defendants at its Michigan locations, and sent Mr. Englund, President of defendant's company, to visit the Michigan facilities on one occasion.[2]

I believe that Index's activities, conducted over a number of years, met the "purposeful availment" test. Defendant's activities when taken as a whole, manifest the creation of "continuing obligations" between defendant and the company doing business in Michigan. *Burger King v.*

*Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). In this light, I also note that the Purchase Order forms which Index accepted from Evans contained a choice-of-law provision specifying that the contract be governed by the laws of the State of Michigan. Defendant argues that "... a choice of law provision is not enough to warrant the assertion of personal jurisdiction over a non-resident defendant." *Northern Trust Co. v. Randolph C. Dillon, Inc.*, 558 F.Supp. 1118 (N.D.Ill.1983); *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 382 (6th Cir.1968). Defendant is correct in that such a provision, alone, cannot be the basis for personal jurisdiction. However, in *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187 the Supreme Court noted:

> Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes. Although such a provision standing alone would be insufficient to confer jurisdiction, we believe that, when combined with the 20–year interdependent relationship [defendant] established with [plaintiff's] Miami headquarters, it reinforced his deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there.

*See also Lak Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1295 (6th Cir.1989). ("... the agreement's Florida choice-of-law provision is by no means irrelevant to the question of personal jurisdiction ... [t]he parties having elected to invoke the benefits of Florida law for deciding disputes under the contract, there is obviously much to be said in favor of letting such disputes be resolved in a Florida court.")

Considering the facts of this case as a whole, including the trip to Michigan, and

---

**2.** Plaintiff has submitted the Affidavit of Ronald Byers, Senior Vice president and Chief Operating Officer of Evans. Mr. Byers' affidavit states that "[o]n several occasions, officers of Index Industries were physically present in Michigan for discussions and negotiations relating to the matters at issue in this action." Aff. at 2. This statement, however, without the specification of names or dates does not rise to the level of "specific facts" required in responding to a motion to dismiss for lack of jurisdiction. *Serras*, 875 F.2d at 1214. Accordingly, I have not considered this allegation in reaching my decision on this point, and have relied solely on Mr. Englund's admission that he was in Michigan in July of 1986.

the choice of law provision in the contract, I find that the "purposeful availment test" has been met. Defendant had fair warning that its activities, and the choice of law provision, might subject it to suit in Michigan.

Nor has defendant offered any evidence to convince this Court that the exercise of jurisdiction over defendant would offend the traditional notions of fair play and substantial justice. Plaintiff has met its burden of establishing a prima facie showing of personal jurisdiction. It has supplied the Court with an affidavit which supports its allegations that defendant has met both the statutory and due process requirements for limited personal jurisdiction under Mich.Comp.L. § 600.715(1). Accordingly, I will enter an order denying defendant's motion to dismiss for lack of personal jurisdiction. I now turn to defendant's motion for transfer of venue.

## VENUE

■ Defendant argues that venue in this District is improper. Venue is controlled by 28 U.S.C. § 1391 which provides, in part:

> (a) A civil action wherein jurisdiction is found only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

However, in its lengthy argument about where plaintiff technically resides, defendant fails to address 28 U.S.C. § 1391(c) which provides in part:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Thus, having found that defendant is properly subjected to long-arm personal jurisdiction in Michigan, it is apparent that venue is proper in the Western District of Michigan, in which all of defendant's contacts with Michigan occurred.

*Motion to Transfer*

Defendant has filed a motion to transfer under 28 U.S.C. § 1404(a), the statutory codification of the common law doctrine of *forum non conveniens.* Section 1404(a) provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought.

■ The standard for transfer under § 1404(a) leaves much to the broad discretion of the trial court. *Philip Carey Manufacturing Co. v. Taylor,* 286 F.2d 782 (6th Cir.1961; *Fine v. McGuire,* 433 F.2d 499 (D.C.Cir.1970); *Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735 (1st Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977).

■ The burden is on the defendant to persuade the court that transfer is appropriate and should be granted. *Factors, Etc. Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978); *Time, Inc. v. Manning,* 366 F.2d 690 (5th Cir.1966). It is clear, of course, that without more than a defendant's mere preference for a particular forum, the motion to transfer must be denied. *Consolidated Rail Corp. v. Grand Trunk Western Railroad,* 592 F.Supp. 562 (E.D.Pa. 1984); *American Contract Designers v. Cliffside, Inc.,* 458 F.Supp. 735 (S.D.N.Y.1978). Likewise, transfer is not proper if the result is simply to shift the inconvenience from one party to another. *See, e.g., Kimball v. Schwartz,* 580 F.Supp. 582 (W.D.Pa.1984); *Central States Pension Fund v. Brown,* 587 F.Supp. 1067 (N.D.Ill.1984). Defendant has supplied no argument in support of its motion to trans-

**378**

fer. Accordingly, it has not met its substantial burden of demonstrating a strong balance of convenience in its favor. *Vassallo v. Neidermeyer*, 495 F.Supp. 757 (S.D.N.Y.1980); *William A. Smith Contracting v. Travelers Indem. Co.*, 467 F.2d 662 (10th Cir.1972). Accordingly, defendant's motion to transfer is denied.