GRAND KENSINGTON, LLC, a Michigan limited liability corporation, Grand Kensington Sandusky, Inc., a Michigan corporation, Joseph A. Colyer and Candice Kutey, Plaintiffs,

v.

BURGER KING CORPORATION, a Florida Corporation, Defendant.

No. 99–CV–73038–DT.

United States District Court, E.D. Michigan, Southern Division.

Feb. 1, 2000.

David H. Oermann, Norman N. Yatooma, Butzel Long, Birmingham, MI, Phillip C. Korovesis, Butzel Long, Detroit, MI, for plaintiffs.

Larry K. Griffis, Jaffe, Raitt, Detroit, MI, for defendant.

## *OPINION AND ORDER*

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), or, in the alternative, defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12.[1] Plaintiffs responded and defendant replied. The parties have adequately set forth the relevant law and facts and oral argument would not aid in the disposition of the instant motions. *See* E.D.Mich.L.R. 7.1(e)(2). Accordingly, the Court OR-DERS that the motions be decided on the briefs submitted. For the reasons set forth below, defendant's Motion to Transfer Venue and defendant's Motion to Dismiss are DENIED.

### II. BACKGROUND

Plaintiffs filed their complaint in the present case on June 15, 1999. Plaintiffs' complaint alleges five separate counts: (1) violation of the Michigan Franchise Investment Law, Mich.Comp.Laws § 445.1505; (2) fraud and misrepresentation; (3) silent fraud; (4) innocent misrepresentation; and (5) promissory estoppel. Generally, plaintiffs' complaint arises out of the business dealings between themselves and defendant over the course of approximately five years. Essentially, plaintiffs contend that various agents of defendant promised that plaintiffs would be permitted to open twenty-five Burger King franchises in the Detroit Metropolitan area in a five to ten year period. In exchange for the opportunity to develop the twenty-five stores in the Metropolitan Detroit area, plaintiffs allege that they did many things, including opening a Burger King in Sandusky, Michigan, agreeing to open another store in Marlette, Michigan, and agreeing to sell their interests in two other fast food franchises. Plaintiffs allege that defendant has breached this agreement and is no longer going to allow them to open twenty-five stores in the Metropolitan Detroit area.

### III. DEFENDANT'S MOTION TO TRANSFER VENUE

#### A. Legal Standards

■ The first motion brought by defendant is a Motion to Transfer Venue to the

---

1. Plaintiffs have also filed a Motion to Strike, or in the Alternative, to File Surrebuttal Brief. Plaintiffs argue that the Court should strike defendant's reply brief because it argues for the first time in this brief that plaintiffs' claims are barred by a general release in the contract. However, the Court need not address this issue because defendant's claims are based upon Florida law. As the discussion in this opinion will demonstrate, Florida law is inapplicable to this case. Further, under the Michigan Franchise Investment Law, "[a] requirement that a franchisee assent to a release, assignment, novation, waiver, or estoppel which deprives a franchisee of rights and protections provided in this act" is void and unenforceable if "contained in any documents relating to a franchise." Mich.Comp. Laws § 445.1527(b) (1984).

Southern District of Florida. 28 U.S.C. § 1404(a) provides for transferring venue:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F.Supp. 93, 95–96 (E.D.Mich.1991). However, a court "should give deference to a plaintiff's choice of venue." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 668 (E.D.Mich.1996). "When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum." *Id.*

■ The first question for a court when considering a motion under § 1404(a) is whether "the transferred action could have been brought in the transferee court." *MCNIC Oil & Gas Co. v. IBEX Resources Co., L.L.C.*, 23 F.Supp.2d 729 (E.D.Mich. 1998) (quoting *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987*, 737 F.Supp. 391, 393 (E.D.Mich. 1989)). If answered in the affirmative, then a court should consider the following factors when ruling on a motion under § 1404(a):

(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Helder*, 764 F.Supp. at 96. Further, a court may also consider: (1) administrative difficulties caused by the litigation; (2) burdening members of a community unrelated to the litigation with jury duty; (3) the interest of having local disputes resolved locally; and (4) the appropriateness of having a diversity case "in a forum that is at home with the state law that must govern the case." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Basically, a court may consider any factor that may make a trial "easy, expeditious, and inexpensive." *Helder*, 764 F.Supp. at 96 (quoting *Gulf Oil Corp.*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055).

**B. Analysis**

■ Initially, the Court finds that this action could have been brought in the Southern District of Florida because it is a judicial district in which defendant resides. *See* 28 U.S.C. § 1391(a)(1). Therefore, the case could be transferred to the Southern District of Florida under 28 U.S.C. § 1404(a). However, after weighing several factors, the Court finds that defendant's Motion to Transfer Venue should be denied.

Defendant points to several factors which it argues weigh in favor of transferring the case. First, defendant contends one factor that weighs in favor of transfer is that Florida law governs this case. However, as the later discussion in this opinion will demonstrate, Florida law is not applicable to this matter.

Defendant also argues that the location of the witnesses supports transfer. The Court disagrees. Both corporate plaintiffs are incorporated in Michigan. The two individual plaintiffs reside in Michigan. Further, as plaintiffs discuss in their brief, of the fourteen individuals mentioned in the complaint, nine reside in Michigan. Plaintiff also identifies twelve witnesses that have knowledge about defendant's franchise expansion practices, each of whom lives in Michigan. Consequently, the Court finds that the location of witnesses weighs in favor of denying a transfer of venue.

Defendant also argues that the location of the documents weighs in favor of transferring the matter to Florida. Although the Franchise Agreement and other related documents may be maintained at defendant's corporate headquarters in Florida, the Court does not find that this has any bearing on whether to transfer the case. Given the conveniences of today's world, the Court finds that bringing various documents to this district is not burdensome, let alone something that would tip the scales in favor of transferring the matter to Florida.

In sum, defendant identifies three reasons for transferring this matter to Florida. However, none of these factors weighs in defendant's favor. Although defendant will undoubtedly be burdened by holding the present proceedings in the Eastern District of Michigan, the Court finds that, if granted, the only result of defendant's Motion to Transfer Venue would be to shift this burden onto plaintiffs. Merely shifting the burden from one party to another is impermissible. *Evans Tempcon, Inc. v. Index Industries, Inc.,* 778 F.Supp. 371, 377 (W.D.Mich.1990). Because defendant has neither overcome the presumption that plaintiffs filed this case in the proper forum, nor proffered any reason to support transferring the case, defendant's Motion to Transfer Venue is DENIED.

## IV. CHOICE OF LAW

The next issue to consider is which state's law will apply to the present case. In its brief in support of its Motion to Dismiss, defendant summarily concludes that Florida law applies to the present case. Basically, defendant contends that since the various written instruments at issue in this matter provide for the application of Florida law, Florida law must apply. However, plaintiffs disagree with defendant, arguing that for various rea-

sons, Michigan law applies. The Court will now examine the relevant choice of law provisions to determine whether Michigan or Florida law applies to the current case.

### A. Legal Standards

Because the parties dispute whether Michigan or Florida law governs in this diversity case, the Court must apply the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Because plaintiffs filed the instant suit in the Federal District Court for the Eastern District of Michigan, the Court looks to Michigan's conflict of laws rules to determine whether Michigan or Florida law applies.

■ Michigan has adopted the approach set forth in the Restatement (Second) of Conflict of Laws to determine whether a contractual choice of law provision[2] will bind the parties. *See Chrysler Corp. v. Skyline Industrial Services, Inc.,* 448 Mich. 113, 126, 528 N.W.2d 698 (1995). Under this approach, a contractual choice of law provision will bind the parties unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [§ ] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 739 (6th Cir.1999) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1988)). This Court is mindful that it should "move cautiously when asked to

---

**2.** Under the Michigan Franchise Investment Law, a choice of law provision is permissible. *See* Mich.Comp.Laws § 445.1527; *Banek Inc.*

*v. Yogurt Ventures, U.S.A., Inc.,* 6 F.3d 357, 360 (6th Cir.1993).

hold contract clauses unenforceable on public policy grounds...." *Banek*, 6 F.3d at 362 (quoting *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir.1991), *cert. denied* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991)). Finally, the fact that a different result might be attained if Florida law is applied does not, by itself, show that Florida law is repugnant to a fundamental policy of Michigan. *See Banek*, 6 F.3d at 363.

It is clear that the chosen state has a substantial relationship to the parties as defendant maintains its headquarters in Florida. Consequently, Restatement (Second) of Conflict of Laws § 187(2)(a) is not at issue. However, whether application of Florida law would be contrary to a fundamental policy of Michigan, Restatement (Second) of Conflict of Laws § 187(2)(b), is more difficult to determine. Michigan's public policy for franchises is set forth in the Michigan Franchise Investment Law (MFIL). *Banek*, 6 F.3d at 362 n. 3. The question to ask at this point is whether the choice of Florida law would substantially erode "the quality of protection that the MFIL would otherwise apply." *Id.* at 362. A review of the relevant Florida and Michigan laws is necessary to make this determination.

The Florida Franchise Act (FFA) defines the following as unlawful actions:

(a) It is unlawful, when selling or establishing a franchise or distributorship, for any person:

1. Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship;

2. Intentionally to misrepresent, by failure to disclose or otherwise, the known required total investment for such franchise or distributorship; or

3. Intentionally to misrepresent or fail to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain.

Fla.Stat. § 817.416(2). The relevant Michigan law concerning franchises is the aforementioned MFIL, which states:

A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Mich.Comp.Laws § 445.1505.

After comparing the FFA and MFIL, the Court finds that applying the Florida law in this case would substantially erode the protection plaintiffs enjoy under Michigan law. The FFA does not provide the same protection to franchisees as the MFIL. A review of the MFIL demonstrates that it proscribes any type of fraud or untrue statement in connection with the filing, offer, sale, or purchase of a franchise. Mich.Comp.Laws § 445.1505. However, the FFA does not afford this same level of protection, as it only prohibits fraud in three instances: (1) when the chances of success for a franchisee are misrepresented; (2) when the total investment for a franchise is misrepresented; or (3) when the franchisor misrepresents its efforts to establish more franchises in a given area than is reasonably expected for the given area to sustain. Fla.Stat. § 817.416(2).

Given these three limited instances of fraud prohibited by the FFA, the Court finds that plaintiffs would be unable to establish a cause of action under the FFA. Essentially, plaintiffs allege that various agents of defendant falsely represented that plaintiffs would be able to open twen-

ty-five Burger King franchises in the Detroit Metropolitan area within five to ten years. Plaintiffs' allegations do not amount to conduct which would fall under any of the three areas proscribed by the FFA. Consequently, if Florida law to apply, the protection plaintiffs enjoy under Michigan law would be substantially eroded.

Further, even if Florida law were to apply in this situation, and plaintiff's could plead a cause of action under the FFA, there is a question as to whether plaintiffs could avail themselves of the minimal protection offered by the FFA. Under the FFA, a person is defined as "an individual, partnership, corporation, association, or other entity doing business in Florida." Fla.Stat. § 817.416(1)(a). The FFA provides a private cause of action to "[a]ny person, who shows in a civil court of law a violation of this section may receive a judgment for all moneys invested in such franchise or distributorship." Fla.Stat. § 817.416(3).

The literal interpretation of the FFA's language would preclude a non-Florida franchisee, such as plaintiffs in the present case, from bringing a cause of action under the FFA. This is because under the FFA, the term "person" only encompasses business entities which conduct business in Florida. Fla.Stat. § 817.416(1)(a). Therefore, in order to be a "person" under the FFA, that "person" must conduct business in Florida. A review of plaintiffs' complaint shows that plaintiffs' contacted various agents of defendant in Florida, met with at least one of defendant's agents in Florida, and attended a training session in Miami. However, plaintiffs have made no allegations that they conducted any business in Florida. On the contrary, nearly all of plaintiffs' business has been conducted in Michigan.

The federal district courts in Florida have addressed the question of whether a franchisee located outside of the state of Florida can avail itself of the FFA. Three of the decisions have allowed for a non-Florida franchisee to bring a cause of action under the FFA. *See Dickinson v. Executive Business Group, Inc.*, 983 F.Supp. 1395, 1397 (M.D.Fla.1997) (finding that a Texas franchisee may have a valid claim under the FFA); *Burger King Corp. v. Holder*, 844 F.Supp. 1528, 1531 (S.D.Fla. 1993) (holding that since Burger King does business in Florida, the FFA applies); *Burger King Corp. v. Austin*, 805 F.Supp. 1007, 1022–23 (S.D.Fla.1992) (concluding that since a choice of law provision in the contract provided for the application of Florida law, Burger King was subject to the FFA). However, in *Barnes v. Burger King Corp.*, 932 F.Supp. 1441, 1443 (S.D.Fla.1996), the court interpreted the definition of person under the FFA to apply only to those persons who conducted business in Florida. The court concluded that since the plaintiff did not conduct business in Florida, he did not have a cause of action under the FFA. *Id.*

Although three district courts in Florida find that non-Florida franchisees, such as plaintiffs, could avail themselves of the protections offered by the FFA, one district court has reached the opposite conclusion. Further, the Court finds that a literal interpretation of the FFA precludes plaintiffs from bringing a cause of action under the FFA. The Court finds that the current state of uncertainty with the application of the FFA to non-Florida franchisees further erodes "the quality of protection that the MFIL would otherwise apply." *Banek*, 6 F.3d at 362.

The Court concludes that the choice of Florida law substantially erodes the protection plaintiffs enjoy under the MFIL and that application of Florida law to this matter would be contrary to a fundamental policy of Michigan. In addition to this finding, Restatement (Second) of Conflict of Laws § 187(2)(b) also requires that the Court examine Restatement (Second) of Conflict of Laws § 188(2) to determine whether Michigan law is applicable to the present case. Section 188(2) provides:

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

After reviewing § 188(2), the Court concludes that Michigan law is applicable to the present matter. The contract between plaintiffs and defendant states that it was entered into in Florida. However, the place of performance and the subject matter of the contract weigh heavily in favor of applying Michigan law. Plaintiffs' franchise is located in Michigan, and the location of the additional twenty-five franchises was to be Michigan. Consequently, because the FFA does not provide the same protection that the MFIL provides, because there is a question as to whether plaintiffs could even avail themselves of the FFA were Florida law to apply, and because Michigan has more contacts to the contract than Florida, the Court finds that Michigan law applies to the present case. Consequently, defendant's Motion to Dismiss, which is based upon Florida law, is DENIED.

## V. CONCLUSION

For the reasons discussed above, defendants' Motion to Transfer Venue is DENIED. Further, defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.