AUDI AG & VOLKSWAGEN OF
AMERICA, INC., Plaintiffs,

v.

George IZUMI, Defendant.

No. 01–CV–74520–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 23, 2002.

Gregory D. Phillips, Scott R. Ryther, Howard, Phillips & Andersen, Salt Lake City, UT, Edward C. Cutlip, Jr., Kerr, Russell & Weber, Detroit, MI, for Plaintiffs.

John R. Walton, Thomas, Walton & Graves, Los Angeles, CA, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO QUASH THE SUMMONS AND DISMISS FOR IMPROPER SERVICE, DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF VENUE AND DENYING, WITHOUT PREJUDICE, DEFENDANT'S MOTION TO TRANSFER

WOODS, District Judge.

This matter having come before the Court on Defendant's motion to quash, to dismiss and/or alternatively, to transfer [Doc. No. 4];

The Court having reviewed the pleadings submitted herein, and being otherwise fully informed in the matter;

IT IS HEREBY ORDERED that Defendant's motion to quash the summons and to dismiss for improper service pursuant to FED.R.CIV.P. 12(b)(5) shall be, and hereby is, DENIED; Defendant's motion to dismiss for lack of personal jurisdiction pursuant to FED.R.CIV.P. 12(b)(2) shall be, and hereby is, DENIED; Defendant's motion to dismiss for improper venue pursuant to FED.R.CIV.P. 12(b)(3) and 28 U.S.C. § 1406 shall be, and hereby is, DENIED; and Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) shall be, and

hereby is, DENIED, WITHOUT PREJUDICE.

## I. BACKGROUND

■ Plaintiffs, Audi AG ("Audi") and Volkswagen of America, Incorporated ("Volkswagen") (also collectively referred to as "Plaintiffs"), brought this action against Defendant, George Izumi ("Izumi" or "Defendant"), alleging: (1) cybersquatting under 15 U.S.C. § 1125(d);[1] (2) trademark dilution under 15 U.S.C. § 1125(c)(1); (3) trademark infringement of its federally registered mark A6® under 15 U.S.C. § 1114(1); and (4) false designation of origin under 15 U.S.C. § 1125(a). Plaintiffs allege that Defendant has registered and used the domain name A6.com, a pornography web site, in contravention of Plaintiffs' right to use its registered mark A6®.

## II. STANDARD OF REVIEW

■ A defendant can seek to have the summons quashed and the action dismissed for improper service pursuant to FED.R.CIV.P. 12(b)(5) ("Rule 12(b)(5)"). The Court examines whether the plaintiff comported with FED.R.CIV.P. 4. Objections to service must be made in the first responsive pleading in order to operate as a device for dismissal. *See* Rule 12(b)(5). In the instant case, Defendant seeks dismissal in its first responsive pleading.

■ When a defendant challenges personal jurisdiction pursuant to FED.R.CIV.P.

---

1. The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), was intended to prevent "cybersquatting," an expression used to describe the bad faith, or abusive, registration and use of the distinctive trademarks of others as internet domain names, with the intent to profit from the goodwill associated with those trademarks. *See, e.g.,* S.Rep. No. 106–140, at 4–5 (1999). Cybersquatting involves the registration as domain names of well-known trademarks by

non-trademark holders who generally attempt to sell the names back to the trademark owners. Domain name registrars do not inquire whether a domain name request is related to existing trademarks, so it is relatively simple and inexpensive for any person to register as domain names the marks of established companies. This practice prevents the mark owners from using the domain name. *See* H.R.Rep. No. 106–412, at 5–7; S.Rep. No. 106–140, at 4–7 (1999).

12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *See Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002). In the instant matter, because the Court is not conducting an evidentiary hearing on the matter of personal jurisdiction, Plaintiffs must make only a prima facie showing, and the Court views the evidence in the light most favorable to plaintiff. *See Neogen,* 282 F.3d at 887; *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). The Court notes that "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). The Court does not, however, consider facts proffered by the defendant that conflict with those offered by the plaintiff. *See id.* at 1459.

■ Defendant also seeks dismissal for improper venue pursuant to FED. R.CIV.P. Rule 12(b)(3). On a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. *See, e.g., Moore v. AT & T Latin America Corp.,* 177 F.Supp.2d 785, 788 (N.D.Ill.2001) (citation omitted); *Solow Bldg. Co., LLC v. ATC Assocs., Inc.,* 175 F.Supp.2d 465, 469 (E.D.N.Y.2001) (citations omitted). If a defendant prevails on a Rule 12(b)(3) challenge, the Court has the discretion to decide whether the action should be dismissed or transferred to an appropriate court. *See* 28 U.S.C. § 1406. In the alternative, Defendant seeks a transfer of the case to a federal court in California pursuant to 28 U.S.C. § 1404(a).

## III. ANALYSIS

### A. Service of Process

■ Defendant first contends that the Court should quash the summons and dismiss this action pursuant to FED.R.CIV.P. 12(b)(5) ("Rule 12(b)(5)") because Plaintiffs allegedly failed to serve Defendant consistent with the FED.R.CIV.P. 4. Federal Rule of Civil Procedure 4 sets forth the proper procedure for service of process of the summons and states, in pertinent part:

(e) Service Upon Individuals Within a Judicial District of the United States. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

.... (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

FED.R.CIV.P. 4(e).

Defendant maintains that service was improper because Plaintiffs falsely represented that Defendant was personally served. The Court is not satisfied, based on the present showing, that service was improper in the instant case. Defendant maintains that a copy of the summons and complaint was simply left at Defendant's door step and that Plaintiffs' process server falsely declared that the summons and complaint had been personally served.

The Court rejects John Walton's, Defendant's counsel, conclusory declaration as evidence to support this serious allegation.

Notably, Walton does not submit a declaration from the process server admitting to any malfeasance. Rather, Walton submits a rather convoluted series of statements that do not adequately support his claim that Plaintiffs' process server failed to serve the summons properly.

Plaintiffs also submit the proof of service signed by their process server, Eddie Trejo, who affirms that he personally served Defendant at his home address. Plaintiffs also submit the declaration of Jan Sharp, a paralegal, who asserts that she instructed the process server to serve the summons and complaint personally upon Defendant and denies advocating any improper method of service. *See* Sharp Declaration at ¶¶ 5–7. She confirms that the return of service was returned, and as directed, indicated that the process server personally served Defendant. *See* Sharp Declaration at ¶¶ 8–9.

On the other hand, Defendant asserts that he was out of town at the end of December. *See* Izumi Declaration at ¶ 16. He claims that he was not personally served and simply discovered the package on his doorstep on February 5, 2002. *See id.* In light of these contradictory claims, Defendant's bare allegations, without more, are insufficient to establish that service was not properly effected. Based on the evidence submitted by Plaintiffs, the Court is satisfied that Defendant was properly served. In so ruling, the Court is not calling into question any person's character or veracity. The Court simply finds that Plaintiffs have provided the Court with a detailed and credible account of what transpired. Accordingly, the Court denies Defendant's motion to dismiss for insufficient service.

The Court is concerned that the tenor of this litigation has already denigrated in a manner inconsistent with the Civility Principles adopted by the United States District Court for the Eastern District of Michigan by Administrative Order Number 96–AC–024. The Court admonishes all counsel to avoid such unnecessary rancor which, in this Court's view, often results in ancillary conflicts that prevent an efficient resolution of the lawsuit.

## B. Personal Jurisdiction

Defendant alternatively argues that this action should be dismissed for lack of personal jurisdiction pursuant to FED.R.CIV.P. 12(b)(2). It is beyond cavil that if the Court lacks personal jurisdiction over Defendant, the Court lacks jurisdiction to adjudicate that party's right, whether or not service was valid and whether the Court has valid subject matter jurisdiction. Plaintiffs must make only a prima facie showing of personal jurisdiction because the Court opts to proceed on the materials supplied by the parties. *See Neogen*, 282 F.3d at 887.

Plaintiffs invoke the Court's subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121. *See* Complt. at ¶ 10(b). None of the applicable provisions of the Lanham Act provides for nationwide service of process on a defendant or otherwise addresses this Court's personal jurisdiction over Lanham Act defendants. Accordingly, the Court must analyze the personal jurisdiction issue presented by Defendant under FED. R.CIV.P. 4(k)(2). *Accord, ISI Int'l. Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir.2001). Therefore, in the present action, the Court is limited in its exercise of personal jurisdiction by constitutional principles of Due Process and the specific requirements of Michigan's long-arm statute.

█ Personal jurisdiction can be invoked either via general jurisdiction, where the defendant has "continuous and systematic" contact with the forum state, *see Perkins v. Benguet Consol. Mining*

*Co.,* 342 U.S. 437, 445–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952), or via limited jurisdiction, where the subject matter of the lawsuit is related to the defendant's contacts with the forum state. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996). Michigan courts universally stress: "For limited personal jurisdiction to attach, the cause of action must arise from the circumstances creating the jurisdictional relationship between the defendant and the foreign state." *Rainsberger v. McFadden,* 174 Mich.App. 660, 662, 436 N.W.2d 412, 413 (1989) (citation omitted).

Plaintiffs assert that this Court can exercise limited personal jurisdiction over Defendant via Michigan's long-arm statute: MICH.COMP.LAWS § 600.715. Specifically, Plaintiffs contend that following relationships are sufficient to exert limited jurisdiction over Defendant: "The transaction of any business within the state [or, alternatively,] [t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." § 600.715(1–2) (internal number designations omitted).

■ The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *See Sifers v. Horen,* 385 Mich. 195, 198–99, 188 N.W.2d 623, 623–24 (1971). The determination of whether jurisdiction attaches under the Michigan long-arm statute requires a two-step analysis:

> First, whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. If not, then whether the rules of statutory construction support such an exercise of jurisdiction over defendants.

*Walter v. M. Walter & Co., Inc.,* 179 Mich. App. 409, 412, 446 N.W.2d 507, 509 (1989) (citations omitted) (per curiam). Under

Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992) (citation omitted); *Green v. Wilson,* 455 Mich. 342, 349–50, 565 N.W.2d 813, 816 (1997).

### 1. Due Process Concerns

■ In order to comply with the Due Process Clause, the plaintiff must establish that significant minimum contacts exist sufficiently to satisfy "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed: 95 (1945) (citation omitted). Drawing on the teachings of *International Shoe,* the Sixth Circuit has set forth three criteria that must be met before a court will exercise personal Jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe,* 89 F.3d at 1263 (citations omitted). *Accord, Rainsberger,* 174 Mich. App. at 663, 436 N.W.2d 412 (citations omitted).

### a. Purposeful Availment

■ Under the first prong of the Due Process inquiry, the Court must determine whether Defendant purposefully availed himself of the privilege of conducting business or causing consequences in Michigan. "[T]he question of whether a

defendant has purposefully availed itself of the privilege of doing business in the forum state is 'the sine qua non for in personam jurisdiction.'" *CompuServe,* 89 F.3d at 1263 (citation omitted). It "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random' 'fortuitous,' or 'attenuated' contacts." *Burger King,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). The Court finds that a defendant purposefully avails himself if the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174. *Accord, Jeffrey,* 448 Mich. at 187, 529 N.W.2d 644 ("'[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court.") (quotation omitted).

In the present action, Plaintiffs assert that Defendant's act of maintaining a web site that is accessible to Michigan residents constitutes transacting business within the state. It is undisputed that Defendant was the registrant of the website "a6.com." *See* Izumi Declaration at ¶ 7. Defendant contends, however, that he merely registered the site on behalf of his employer, A6, Inc., and that he neither owns nor operates the website. *See id.* at ¶¶ 7–8. Defendant admits that he was employed by A6, Inc., starting in March 1994, but claims that his employment relationship ended on July 31, 2001. *See id.* at ¶ 3.

Plaintiffs have not named A6, Inc., or its officers in the instant lawsuit. The Court declines to address whether it possesses personal jurisdiction over any of these entities.

Defendant admits that a user may e-mail A6, Inc., via its website. *See* Izumi Declaration at ¶ 10. Defendant contends, however, that the web site is passive, serving simply as "a general advertisement of A6 and some of its products." *Id.* at ¶ 9. Defendant asserts that a person accessing this site cannot purchase a product on-line, but "is redirected by hyperlinks to another company's website." *Id.* Plaintiffs assert that the web site is interactive. They maintain that a user can purchase A6 products advertised on the web site by clicking on a link allowing the user to "buy it here." *See* Plfs.' Ex. B, Scott Ryther Declaration at ¶¶ 3–4. Plaintiffs maintain that Defendant's interactive web page, available to Michigan citizens, constitutes a contact sufficient to exert personal jurisdiction over Defendant.

■ In the Internet context, courts generally determine whether personal jurisdiction is triggered by examining the level of interactivity and commercial nature of the information found on the web site. *See Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418–19 (9th Cir.1997) (citations omitted). Such cases can be divided into three categories. The first category includes site that are highly interactive. The ability to download, transmit or exchange information with a defendant via the computer and the presence of on-line contracts between a defendant and a plaintiff are sufficient for a court to exercise personal jurisdiction over a defendant. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996) (holding that defendant had a "substantial connection" with the forum state because he "chose to transmit his software from Texas

to CompuServe's system in Ohio, that myriad others gained access to [defendant's] software via that system, and that [defendant] advertised and sold has product through that system."). The second category includes passive web sites, i.e., sites that merely provide information to those who seek it. *See, e.g., Cybersell,* 130 F.3d at 418–19. Courts generally decline to exercise personal jurisdiction in cases involving passive web sites. *See id.* The third category is a hybrid of the first two, implicating interactive web sites in which a user can exchange some information with the host computer. *See, e.g., Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074 (C.D.Cal.1999).

■ Based on the record before this Court, the Court finds that purposeful availment attaches to Defendant, and he has reason to foresee himself being haled before a Michigan court. From the evidence submitted by Plaintiffs, the web site allows customers to purchase items and, at a minimum, attempts to solicit business from Michigan residents. Additionally, Plaintiffs, whose United States headquarters are in Michigan, maintain that Defendant, during negotiations with Plaintiffs, offered to sell the rights to this web site to Plaintiffs. *See* Complaint at ¶¶ 5 & 7. Because this Court resolves the instant motion without hearing, the Court finds that Plaintiff has made a prima facie showing of purposeful availment. *See Neogen,* 282 F.3d at 887; *CompuServe,* 89 F.3d at 1262.

#### b. Action Arose in Forum State

■ Under the next part of the Due Process inquiry, the Court considers whether the plaintiff's cause of action arose from the defendant's activities in the forum state. *See Jeffrey v. Rapid Am. Corp.,* 448 Mich. 178, 186, 529 N.W.2d 644, 649–50 (1995). In this case, there is no serious dispute that Plaintiffs' cause of action arises from the web site and Defendant's alleged attempt to sell the rights to the web site to Plaintiff for $186,000. *See* Complt. at ¶ 5. Furthermore, as the Court previously indicated, Plaintiff Audi AG's United States of America headquarters are located in Auburn Hills, Michigan. *See* Complt. at ¶ 7. The Court finds that Plaintiffs have satisfactorily satisfied this prong of the Due Process inquiry.

#### c. Reasonableness

■ Finally, Due Process requires that the exercise of personal jurisdiction be reasonable. Reasonableness is a function of numerous factor, including:

> ... the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted). Where the defendant has directed its actions at the forum and the plaintiff's claim arises out of those actions, the defendant must show a compelling reason why jurisdiction is unreasonable. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174.

■ Defendant has failed to offer any compelling reason why jurisdiction in Michigan is unreasonable. Defendant's principal argument essentially equates with a claim that litigating in this forum would be inconvenient. Because Defendant has directed his activities in Michigan, Defendant's inconvenience is insufficient to establish a compelling reason why jurisdiction in Michigan is unreasonable. *See Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. In light of the fact that the

scope of Michigan's Long Arm statute extends to the full limits of the Due Process inquiry, the Court's analysis is complete. The Court finds that Plaintiffs have made a prima facie showing of personal jurisdiction over Defendant. *See Neogen,* 282 F.3d at 887; *CompuServe,* 89 F.3d at 1262.

### C. Venue

 The Court initially notes that Defendant's motion to dismiss for improper venue and/or alternatively, to transfer to a proper venue, made neither specific reference to FED.R.CIV.P. 12(b)(3) ("Rule 12(b)(3)") nor to 28 U.S.C. § 1406(a). The Court notes, however, that Rule 12(b)(3) is the procedural vehicle that governs a challenge for improper venue. The Federal Rules of Civil Procedure do not, however, contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue. Section 1406(a) applies only where venue is improper. *See, e.g., Van Dusen v. Barrack,* 376 U.S. 612, 634, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("[Section] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [section] 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege.").[2] Section 1404 applies in the event that venue is proper, and a party seeks a transfer "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a).

Defendant first maintains, in a conclusory fashion, that this action is subject to dismissal because venue is improper. The venue statute provides, in relevant part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . . .

28 U.S.C. § 1391(b)(1–2).

Defendant argues that venue is not proper in Michigan because Defendant is a California citizen and resides in California. Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." 28 U.S.C. § 1391(b)(2). Defendant suggests that venue is nevertheless proper only in California because, in his view, all events giving rise to the instant suit occurred in California. Based on the broad statutory language, it is quite possible for venue to exist in more than one forum. The statute requires only that a substantial part of the events or omissions transpires in the district, but it does not require a party to weigh which of several districts possesses the most substantial part. *See First Michigan Corp. v. Bramlet,* 141 F.3d 260, 263–64 (6th Cir. 1998) (applying Section 1391(a)); *Woodke v. Dahm,* 70 F.3d 983, (8th Cir.1995) (applying Section 1391(b)).

Here, Defendant does not engage in a substantive analysis. He simply asserts, in summary fashion, that the corporation responsible for the pornographic web site is a California company and that all activities transpired in California. Defendant has failed to present colorable arguments to support his claim that venue in the Eastern District of Michigan is improper

---

**2.** The Court additionally notes that under 28 U.S.C. § 1406(a), in the event the Court determines that venue is improper, either "in the wrong division or district [the Court] shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

under § 1391(b). Accordingly, the Court denies Defendant's motion to dismiss for improper venue.

 Defendant alternatively requests a transfer to a federal district court of California pursuant to 28 U.S.C. § 1404(a). Section 1404 provides, in pertinent part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Courts have broad discretion to transfer an action pursuant to this section to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience. *See generally, Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The Supreme Court instructs that; "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen, supra* at 622, 84 S.Ct. 805). Courts consider the following factors when ruling on a motion to transfer under § 1404(a):

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining unwilling witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Grand Kensington, LLC v. Burger King Corp.*, 81 F.Supp.2d 834, 836 (E.D.Mich. 2000); *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F.Supp., 93, 96 (E.D.Mich. 1991). *Accord, Moses v. Business Card Exp., Inc.* 929 F.2d 1131, 1137 (6th Cir. 1991) (ruling that "court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"). Additionally, the Court may consider the forum's familiarity with the governing law. *See Grand Kensington*, 81 F.Supp.2d at 836 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Generally, a plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing. *See Grand Kensington*, 81 F.Supp.2d at 836 (citing *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 668 (E.D.Mich.1996)). A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another. *See Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F.Supp. 371, 377 (W.D.Mich.1990).

The Court finds that Defendant's request for a transfer should be denied, without prejudice, because Defendant has neglected to offer record evidence in support of any of the seven factors. Defendant's argument that Michigan law has no application has absolutely no bearing on the decision to transfer; this court is familiar with all federal laws and is more than qualified to interpret and apply federal law.

Defendant also alleges that a corporation, A6, Incorporated, has previously filed an action in California. *See* Def.'s Br. at 11. Defendant attaches the complaint, filed in the United States District Court for the Central District of California, as an attachment to counsel's declaration. *See* Walton Declaration at Exhibit A. It ap-

pears that the California declaratory judgment action was filed on January 10, 2002. *See id.* The present action was instituted on November 29, 2001. Defendant has provided no reasons why this Court should decline to exercise its jurisdiction in favor of a later-filed action.[3] The Court declines to construct a party's arguments and further, will not scour the record to support conclusory arguments raised by a party. Without the benefit of a full briefing by both parties, along with appropriate record support, the Court declines to issue a ruling on whether a transfer is appropriate under § 1404(a). This portion of Defendant's motion is therefore denied, without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for improper service pursuant to FED.R.CIV.P. 12(b)(5) is DENIED; Defendant's motion to dismiss for lack of personal jurisdiction pursuant to FED.R.CIV.P. 12(b)(2) is DENIED; Defendant's motion to dismiss for improper venue is DENIED and Defendant's request to transfer this action to California is DENIED, WITHOUT PREJUDICE.

IT IS SO ORDERED.

---

**3.** Nor is there argument, in conjunction with relevant evidence, illustrating that this litigation and the California litigation are essentially duplicative and "that a determination in one action leaves little or nothing to be determined in the other." *Smith v. Securities & Exch. Comm'n,* 129 F.3d 356, 361 (6th Cir. 1997) (citations omitted) (en banc).