**Donna McCUISTON, Rick Miazga, and Ava Miller, Plaintiffs,**

v.

**James P. HOFFA; C.B. Conder a/k/a "Doc" Conder; and International Brotherhood of Teamsters, AFL–CIO, a Labor Organization Defendants.**

No. CIV. 04–70047.

United States District Court, E.D. Michigan, Southern Division.

April 14, 2004.

---

6. *See* Memorandum and Order, at 27–28 n. 14.

Barbara M. Harvey, Detroit, MI, for Plaintiffs.

Wayne A. Rudell, Rudell & O'Neil, Dearborn, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs are residents of Michigan and members of local unions in Michigan. They filed suit against defendants Hoffa (a resident of southeast Michigan), Conder (a resident of Kansas City, Missouri), and the International Brotherhood of Teamsters (IBT), which has its principal office in Washington D.C.. The complaint had three counts: (1) a violation of equal voting rights in violation of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1); (2) breach of the IBT constitution in violation of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; and (3) breach of duty of fair representation in violation of the National Labor Relations Act, 29 U.S.C. § 159(a).

Defendant Conder moved to dismiss this case on the basis that this Court lacks personal jurisdiction and venue in this Court is improper. Defendants Hoffa and the IBT brought a motion to dismiss that in part challenges venue as improper. Plaintiff contests these motions. For the reasons below, I find that this Court has subject matter jurisdiction over all claims, personal jurisdiction over all defendants, and is a proper venue for all claims. I further find none of the claims merit discretionary transfer to another venue.

## FACTUAL BACKGROUND

The heart of plaintiffs' claim is the allegation that defendants announced that plaintiffs' contract, the Michigan Office Workers Supplement, had been ratified in an election when it in fact had not. Plaintiffs comprise three of sixteen voters on the contract. (Miazga Declaration ¶ 7; Br. in Support of Def. Conder's Mt. to Dismiss, 4.) The vote, which took place at various locations across Michigan, occurred on July 24, 2003. (Complaint ¶ 18.) Ballots were then mailed to Washington, D.C.. (Complaint ¶ 19.) The ratification of the contract was announced on August 1, 2003 by defendants Hoffa and Conder. (Mt. for Preliminary Inj. Ex. F.)

## ANALYSIS

The first determination to be made is whether this Court has subject matter jurisdiction over each count. That determination requires analyzing: (1) whether there is a statutory basis for jurisdiction in this Court; and (2) whether my jurisdiction is barred by the Consent Decree issued in the Southern District of New York involving IBT. If subject matter jurisdiction exists, the next question to be considered is whether this Court has personal jurisdiction over the defendants. Following that inquiry, the next question for this Court is whether the case should be transferred to another venue. I will address the issues in that order.

### A. Subject Matter Jurisdiction

Plaintiff asserts three statutory bases for subject matter jurisdiction (one for each count). I will address them in the order of the counts in the complaint. I will then analyze the Consent Decree in the Teamsters case to establish whether it bars my jurisdiction over this case.

### 1. LMRA

■ The LMRA's subject matter jurisdictional statute, which was section 301 of the original legislation,[1] reads, "Suits for violations of contracts between...any such labor organizations may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Labor union constitutions are considered contracts covered by this provision. *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). Thus, as long as personal jurisdiction is present, this Court has jurisdiction over plaintiffs' LMRA claim.

### 2. LMDRA

The LMRDA's jurisdictional statute reads in part,[2] "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

■ Plaintiffs allege a violation of the rights protected by 29 U.S.C. § 411(a), which provides in part that "every member of a labor organization shall have equal rights [...] to vote in elections." Al-

though courts have imposed fairly stringent requirements on the allegations that qualify as raising an issue under this provision, a "variance or irregularity [that] results in discriminatory deprivation of an individual's right to cast a meaningful vote" does qualify. *Blanchard v. Johnson*, 532 F.2d 1074 (6th Cir.), *cert. denied*, 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976). The right to cast a meaningful vote certainly includes the right to have the votes be counted in a non-fraudulent manner, and the allegations here do include discriminatory deprivation, since the "yes" votes were allegedly counted accurately while "no" votes were not. Therefore, plaintiffs do allege a violation of the appropriate section, and this Court has jurisdiction over the LMRDA claim.

### 3. National Labor Relations Act and the General Jurisdiction Statute

The duty of fair representation is inferred from the National Labor Relations Act, 29 U.S.C. § 159(a). *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 563, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). The National Labor Relations Act does not have its own jurisdiction provision, so jurisdiction over this claim is properly reached under 18 U.S.C. § 3231. *See, e.g., Moore v. Local*

---

1. In the statute, 29 U.S.C. § 185(c) is labeled "jurisdiction," while 29 U.S.C. § 185(a) is labeled "venue." However, courts agree that despite their labels, § 185(c) is in fact the venue provision while § 185(a) defines the bounds of jurisdiction. *See, e.g., Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 102, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991) ("Congress expressly provided in § 301(a) for federal jurisdiction"); *White Motor Corp. v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of America*, 491 F.2d 189, 191 (2nd Cir.1974) ("We hold that section 301(a) does provide for venue for actions under the LMRA."); *Barefoot v. Int'l Bhd. of Teamsters*, 424 F.2d 1001, 1003 (10th Cir.

1970) ("venue requirements of Section 185(c)"); *Murphy v. Hotel & Rest. Employees & Bartenders Int'l Union*, 102 F.Supp. 488, 492 (E.D.Mich.1951) ("301(a) [...] confers on the District Courts jurisdiction of suits"); *Dixie Carriers, Inc. v. Nat'l Mar. Union of America, AFL–CIO*, 35 F.R.D. 365, n. 5 (S.D.Tex. 1964) ("The term 'jurisdiction' as used in the statute obviously means venue.").

2. This jurisdictional grant of power applies to suits alleging violations of union constitutions brought by individual union members. *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991).

*Union 569 of Int'l Bhd. of Elec. Workers,* 989 F.2d 1534, 1537 (9th Cir.1993).

### 4. Consent Decree

■ The Consent Judgment entered in the Southern District of New York that affects the IBT does not apply to this litigation and therefore does not bar my jurisdiction over this case. The consent decree gives the Southern District of New York exclusive jurisdiction over those actions that challenge any act of the Independent Review Board (IRB) that the federal court created to oversee investigations of the Teamsters. *United States v. IBT,* 728 F.Supp. 1032, 1039 n. 5 (S.D.N.Y.1990), *aff'd* 907 F.2d 277 (2nd Cir.1990). Because the plaintiffs do not challenge any action of the IRB, the order under the All Writs Act limiting jurisdiction does not act as a bar to my hearing the case.

## B. Personal Jurisdiction

### 1. Defendants Hoffa and IBT

Defendants Hoffa and IBT did not raise the issue of personal jurisdiction. Failure to raise the defense of lack of personal jurisdiction will result in it being waived. Fed.R.Civ.P. 12(g).

Plaintiffs have the burden of establishing that this Court has personal jurisdiction over defendant Conder.[3] *Neogen v.*

*Neo Gen Screening,* 282 F.3d 883, 887 (6th Cir.2002). A court must consider all affidavits and pleadings in a light most favorable to plaintiffs.[4] *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). A federal court may exercise personal jurisdiction over a defendant if such jurisdiction (1) is authorized by the law of the state in which it sits, and (2) satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. *Neogen,* 282 F.3d 883, 887 (6th Cir.2002) (citing *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994)).

This Court is bound by an interpretation of the Michigan long-arm statute as conferring "the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment," *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir.1989) (citations omitted). Therefore, the analysis of whether this Court can exercise personal jurisdiction turns on whether the due process requirements have been met in this case.

■ In order to satisfy due process, a nonresident defendant must have sufficient contacts with the forum state to allow the district court's exercise of jurisdiction to comport with traditional notions of fair play and substantial justice. *Internation-*

---

**3.** Plaintiffs allege that this Court has both general jurisdiction over defendant Conder and specific jurisdiction over him for the purpose of this case. Because a finding of specific jurisdiction would be sufficient to allow me to hear the case, I only analyze that argument.

**4.** A motion to dismiss for lack of personal jurisdiction should be denied if the plaintiff alleges sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *See, e.g., Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103 (11th Cir.1982), appeal after remand, 748 F.2d 1499 (11th Cir.1984), reh'g denied, 755 F.2d 176 (11th

Cir.1985); *Madden v. Int'l Assoc. of Heat and Frost Insulators and Asbestos Workers,* 889 F.Supp. 707, 709–10 (S.D.N.Y.1995), citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2nd Cir.1990), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). Moreover, in this case, all allegations in the complaint have been incorporated into the sworn affidavit of plaintiff Miazga in paragraph 1, and therefore these allegations must be interpreted in the light most favorable to the plaintiff's showing of jurisdiction under Sixth Circuit precedent. *See, e.g., Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).

*al Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Sixth Circuit employs three criteria to determine whether this requirement has been met: (1) whether the defendant has personally availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) whether the cause of action arises from the defendant's activities in the forum state; and (3) whether the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *Neogen,* 282 F.3d 883, 889–890 (6th Cir.2002) (citing *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996).

▇ Plaintiffs allege in their complaint that Conder falsely announced that the agreement in question, which affected Michigan workers only, had been ratified. (Compl.¶ 20, ¶ 22.) The allegation that defendant Conder personally and purposefully made an announcement that had consequences in Michigan (and indeed, only in Michigan), that action does rise to the level of personal availment. Secondly, if we assume the second prong of the Sixth Circuit's test is meant to test whether the action arises out of the acts identified as

personal availment in the first prong, and are not limited to activities that occurred within the forum state,[5] then because the cause of action is based directly on that false announcement, the cause of action also arises from defendant's action that caused a consequence in the forum state. Finally, because the consequences of Conder's alleged announcement occurred only in Michigan, that is certainly a substantial enough connection to make the exercise of jurisdiction in this court reasonable.[6]

Therefore, I find I can properly exercise jurisdiction over all claims and defendants, and turn to an analysis of whether this Court is the correct venue for the case.

## C. Venue

I will consider three potential venues for this action: the Southern District of New York, which currently administers the Consent Decree over the IBT; the District Court for the District of Columbia (Washington, D.C.); and this Court, the Eastern District of Michigan.

### 1. Southern District of New York

As discussed above, the Consent Decree over which the Southern District of New York has jurisdiction does not bar jurisdiction in this case because it does not apply

---

5. This reading is the more plausible one given the other case law on this issue. One of the Supreme Court decisions informing the Sixth Circuit's three-prong test is *Burger King Corp. v.Rudzewicz.* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). There, the Supreme Court set out a two prong test for specific jurisdiction: purposeful aliment by defendant of the forum; and alleged injuries arising out of or relating to the activities in that district. The "relating to" language indicates that the Supreme Court did not require that the cause of action must arise out of activities that occurred only in that district, so the Sixth Circuit's test should not be read more narrowly.

6. Moreover, although they fail to raise it in their complaint, plaintiffs allege in one of

their briefs that Conder conducted the negotiations for the underlying agreement in Michigan and that he sent into the state directives about how to handle the vote. (Pls. Br. Opposing Conder's Mt. to Dismiss for Lack of Personal Juris., 3–4.) The Supreme Court has emphasized that the exercise of personal jurisdiction over out-of-state defendants is appropriate when defendants have "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another State." *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174. Negotiating a contract would surely qualify as creating continuing relationships and obligations with Michigan labor union members who would then work under that agreement.

to this matter. For that reason, it would be improper for me to transfer the case to the Southern District of New York, since it is not connected with either the operative facts or witnesses. Therefore, the analysis of transfer under 28 U.S.C. § 1406 and § 1404 will consider only the District Court for the District of Columbia as an alternative venue for this action.

*2. Improper Venue Analysis*

■ Defendants move to transfer venue on the grounds that venue is improper in Michigan pursuant to 28 U.S.C § 1406(a), which provides that:

> "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought."

Plaintiffs have the burden of showing that venue is proper. *See, e.g., Kepler v. ITT Sheraton Corp.*, 860 F.Supp. 393, 396 (E.D.Mich.1994). Both the LMRA and the LMDRA have separate provisions governing venue. The NLRA claim falls under the general venue statute, 28 U.S.C. § 1391. I will discuss each of these statutes in turn.

### *LMRA*

The LMRA's venue statute, 29 U.S.C. 185(c), reads, "For the purposes of actions and proceedings by or against labor organization in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." The IBT's headquarters are in Washington, D.C., so the second provision is at issue here.

■ Defendant argues that the heads of various Locals who oversaw the Michigan voting were not doing so as agents of the IBT. (Memorandum in Supp. of Def. Conder's Mt. to Dismiss, 7). The provisions of the IBT's constitution neither, as a matter of law, establish or negate agency in the Local affiliates in individual disputes. *Barefoot v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 424 F.2d 1001,1004 (10th Cir. 1970). Instead, that determination is made by what a party actually does; for instance, the presence of a union official at the negotiating table will indicate agency. *Id.* Here, plaintiffs allege that the ballots were mailed to Washington, D.C. for counting on the instructions of defendants, indicating some level of control by the IBT. Moreover, plaintiffs allege that defendants Hoffa and Conder attended negotiations of this contract in Detroit. (Pls.' Memorandum in Opposition to Def. Conder's Mt. to Dismiss for Lack of In Personam Jurisdiction, 3, ¶ 2.) These facts are sufficient to establish agency. Therefore, I find that the officials of the Locals who conducted the election and mailed the ballots are agents of defendants for the purposes of the statute, and therefore, this Court is a proper venue for this claim.

### *LMDRA*

■ The venue provision in the LMDRA reads as follows: "Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located." 29 U.S.C. § 412. Defendants argue that because the allegedly fraudulent vote count and announcement took place in Washington D.C., and because the Union's principal office is also located there, this Court is not a proper venue for the LMRDA claim and the case should be

transferred to the District Court of the District of Columbia. (Memorandum in Supp. of Def. Conder's Mt. to Dismiss, 7.)

The Sixth Circuit has held that venue is improper unless the plaintiff makes an allegation that defendants have done something in the district in which the case is filed. *Lodge No. 42 of the Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers,* 324 F.2d 201 (1963), *cert. denied,* 376 U.S. 913, 84 S.Ct. 669, 11 L.Ed.2d 610 (1964). Applying that decision, two district courts have found venue was proper in situations similar to that presented here.

*Vestal v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America* held that although an allegedly illegal interpretation of the IBT's constitution occurred in Washington, D.C., because the interpretation "is challenged by the plaintiffs only because of its direct effect upon the plaintiffs' actions in this district," venue was proper. 245 F.Supp. 623, 625 (M.D.Tenn.1965). That court concluded, "To say that the 'interpretation' of the Constitution did not occur in this district is to ignore the fact that the interpreted Constitution, as applied, vitally affects the rights, duties and actions of plaintiffs." *Id.* Similarly, here, although the allegedly fraudulent announcement of voting results took place in Washington, D.C., the effects of that announcement, a contract ratification that binds plaintiffs and their co-workers to work under certain terms, are felt only in Michigan.

A more recent case from another district court involved a dispute about the jurisdiction of unions and to the issuance of orders to local unions. The international union body contended that because those decisions were made and the orders issued in either Washington D.C. or in Los Angeles, California, venue in Ohio was improper.

*United Food and Commercial Workers Union Local No. 911, AFL–CIO & CLC v. United Food and Commercial Workers International Union, AFL–CIO, CLC,* 119 F.Supp.2d 724 (N.D.Ohio 2000). The court disagreed, finding that because the decision was "based directly on actions taken in this district" and "given the intimate connection of this litigation with events and actions in [this district]," venue was proper. *Id.* at 729, *overruled on other grounds,* 301 F.3d 468 (6th Cir.2002).

Similarly, here, the announcement about the results of the election was based directly and solely on actions taken in this district, namely the exercise of voting rights. It is also intimately connected with this district because the effect of that announcement is felt only in Michigan. Moreover, plaintiffs allege that defendants Hoffa and Conder attended negotiations of this contract in Detroit, so unlike the situation in *Lodge No. 42,* defendants have taken actions within the district that are part of the facts underlying the claim. (Pls.' Memorandum in Opposition to Def. Conder's Mt. to Dismiss for Lack of In Personam Jurisdiction, 3, ¶ 2.) Therefore, I find venue over the LMDRA claim is proper in this district.

### NLRA

The NLRA does not contain its own venue provision, so claims under the Act may be brought "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Because the election occurred here and the contract is in effect here, this forum does have a substantial connection to the events involved in the claim, and therefore I find this court is a proper venue for the NLRA claim. *First Michigan Corp. v. Bramlet,* 141 F.3d 260 (6th Cir.1998).

Thus, this Court is the proper venue for all the claims and therefore none of them can be transferred under § 1406.

### 3. Transfer Analysis (§ 1404)

■■■■ Even if it is a proper venue for a claim, a court may transfer a case to another venue. 28 U.S.C. § 1404. 28 U.S.C. § 1404(a) provides that a district court, "for the convenience of parties and witnesses, in the interest of justice . . . may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To transfer an action, three criteria must be met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties. *Kepler*, 860 F.Supp. 393, 398 (E.D.Mich.1994) (citing *Int'l Show Car Ass'n v. ASCAP*, 806 F.Supp. 1308, 1310 (E.D.Mich.1992)). This Court must consider the following factors in deciding to transfer a case under section 1404(a): (1) The convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *Kepler*, 860 F.Supp. 393, 398 (E.D.Mich.1994) (citing *Int'l Show Car Ass'n v. ASCAP*, 806 F.Supp. 1308, 1310 (E.D.Mich.1992).). Generally, "a plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing." *Audi AG & Volkswagen of America v. Izumi*, 204 F.Supp.2d 1014, 1023 (E.D.Mich.2002).

■■■■ The convenience of witnesses has been called "the most powerful factor governing the decision of whether to transfer a case." 17 *Moore's Federal Practice*, § 111.13[1][f][i]. The determination of rela-

tive levels of inconvenience "rest[s] within the sound judicial discretion of the district judge." *Nicol v. Koscinski*, 188 F.2d 537, 538 (6th Cir.1951). "Transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Audi AG*, 204 F.Supp.2d 1014, 1023 (E.D.Mich.2002).

■■■■ Without naming or even numbering them, defendants argue that the most important witnesses to the case are those who were present when the ballots were counted, and they are not conveniently available in Michigan. (Br. at 10.) Although the ballot counting and alleged fraud occurred in Washington D.C., the ballot casting occurred in Michigan, and proof about what the ballots said before mailing to D.C. could easily be as important if witnesses in D.C. denied that any fraud occurred, so both sets of witnesses would have material statements to make. Here, all the plaintiffs, the other people who voted, the supervisors of the ballot casting, and defendant Hoffa all reside in Michigan. The unnamed witnesses to the ballot counting and the IBT headquarters are in Washington, D.C. The D.C. witnesses are likely to be employees of the IBT, and therefore, may be presumed to be willing to testify in either forum despite inconvenience. 17 *Moore's Federal Practice* § 111.12[1][f][iii], p. 111–80. Defendant Conder resides in Kansas City, Missouri. Given that witnesses with important evidence are likely to be located in both jurisdictions and defendant Hoffa resides in Michigan, these factors lean toward Michigan as the venue that is better for the convenience of the parties and of the witnesses.

Similarly, the relative ease of access to sources of proof, the availability of process to compel unwilling witnesses, and the costs for willing witnesses are factors that do not appear to weigh heavily in favor of

either forum. The availability of process to compel the attendance of unwilling witnesses and the cost of obtaining willing witnesses are likewise split: the Michigan voters could be subpoenaed here, but the Washington vote counters (beyond the defendants) could not be, and vice-versa. The same argument could be made for the cost of obtaining willing witnesses. Likewise, because of the split between two forums of witnesses and evidence, the practical problems associated with trying the case most expeditiously and inexpensively do not weigh strongly in favor of either forum. Finally, the interest of justice does not appear to favor either Washington, D.C. or Detroit for a venue.

In summary, most factors do not weigh in favor of either forum, but the most important factors for the venue determination, the convenience of parties and witnesses, weigh in favor of this district. Therefore, I find none of the claims merit discretionary transfer to Washington, D.C.

## CONCLUSION

I find the following:

● This Court has subject matter jurisdiction over all claims.

● This Court has personal jurisdiction over all defendants.

● This Court is a proper venue for all claims and none of them merit discretionary transfer to another venue.

**IT IS SO ORDERED.**