**Donna McCUISTON, Rick Miazga, and Ava Miller, Plaintiffs,**

v.

**James P. HOFFA; C.B. Conder a/k/a "Doc" Conder; and International Brotherhood of Teamsters, AFL–CIO, a Labor Organization, Defendants.**

**No. CIV. 04–70047.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 6, 2005.

---

Barbara M. Harvey, Detroit, MI, for Plaintiffs.

Wayne A. Rudell, Rudell & O'Neill, Dearborn, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

All Defendants move for summary judgment on all three counts: (1) a violation of equal voting rights in violation of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1); (2) a breach of the IBT constitution in violation of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; and (3) a breach of duty of fair representation in violation of the National Labor Relations Act, 29 U.S.C. § 159(a). For the reasons below, I GRANT in part and DENY in part the motion.

## FACTUAL BACKGROUND

I briefly outlined the facts of this case in my previous opinion finding subject matter and personal jurisdiction. *McCuiston v. Hoffa*, 313 F.Supp.2d 710 (E.D.Mich.2004). However, since the motions now before me were made with the benefit of the factual record following discovery, I feel a statement of the facts as they now stand is in order.

Plaintiffs McCuiston and Miazga are both members in good standing of Teamsters Local Union 299. Plaintiff Ava Miller is a member in good standing of Teamsters Local 332. Defendant Hoffa is the President of Defendant International Brotherhood of Teamsters (IBT). Defendant Conder is IBT's Carhaul Director.

All Plaintiffs were eligible to vote, and did vote, on the proposed Michigan Office Workers Supplement, a contract under which all Plaintiffs work. Initially, the Michigan Office Workers Supplement was defeated, which led to a renegotiation. Unless stated otherwise, all further reference to the Michigan Office Workers Supplement or the contract at issue refer to this renegotiated document.

On July 23, 2003, Defendant Conder sent a memo to all local unions covered by the Michigan Office Workers Supplement regarding the voting on the contract. (Defs.' Mt. For Summ. J., Ex. I.) It advised the four local unions that they should hold a secret ballot vote, gave a ballot form to be copied for the use of voters,[1] and instructed them to hold a meeting of eligible voters, "immediately after which the secret ballot vote should be conducted." (*Id.*) The memo went on to state: "Upon completion of the vote, please place a list of the voters and the ballots in a sealed

---

**1.** Defendants did not provide this Court a copy the ballot sent as an attachment to the memo as part of their filings.

envelope and ship it UPS Overnight Delivery to the IBT Carhaul Division. It is imperative that the secret ballot vote be conducted no later than Friday, July 25, 2003, and the ballots received at the IBT by Monday July 28, 2003." (*Id.*) I have previously held that the heads of various Locals who oversaw the vote on the Michigan Office Workers Supplement were doing so as agents of Defendant IBT, and the facts as they now stand only reinforce that holding. *McCuiston,* 313 F.Supp.2d at 717.

The vote on the revised Michigan Office Workers Supplement was apparently on July 24, 2003, although the cover letter for the ballots sent by Local 580, which was dated July 28, 2003, said that two voters cast their ballots, both of which were marked "yes," on July 17, 2003. (Defs.' Mt. for Summ. J., Ex. D.) Although at least one local union, Local 580, counted the votes before sending the ballots to Washington, D.C., at least one local union, Local 299, did not. (Defs.' Mt. for Summ. J., Ex. D; Scott Deposition, 132–3.)

According to her deposition, Tomica Harris, who worked as a secretary in the Carhaul Division of IBT at the time and reported to Defendant Conder, received, opened and counted the ballots. (Harris Dep. 12–3, 17–8.) Harris stated that all the ballots she received were not uniform in appearance, that she could not remember seeing at least one ballot before her deposition, and that the ballots from Local 580 had arrived by fax instead of through the mail, although a hard copy was eventually received. (*Id.* at 36, 38, 40.) According to Harris, sometime in the end of July, she reported the count to Conder, and returned the ballots to her unlocked desk drawer. (*Id.* at 31, 55.)

A press release of August 1, 2003 issued by Defendant IBT and quoting Defendant Conder announced the ratification and noted that because the contract had now been approved, the entire National Master Automobile Transporters Agreement and all supplements to it, including the Michigan Office Workers Supplement, were now in effect. (Defs.' Mt. for Summ. J., Ex. G.) The ratification of the contract was announced on August 1, 2003 via an e-mail from Defendants Hoffa and Conder. (Defs.' Mt. for Summ. J., Ex. F.)

On September 3, 2003, James DeHann, the independent election supervisor hired by the IBT, certified that the Michigan Office Workers Supplement had passed by a vote of 8 yes and 6 no. (DeHann Deposition, Ex. 2.) DeHann's letter to Defendant Conder certifying the voting results had an attachment of the official vote tallies [2] in the first referendum, showing the results of the first Michigan Officer Workers Supplement vote, in which the Supplement was defeated. There was no attachment tabulating the result of the vote at issue in this case. DeHann admitted in his deposition that he had no personal knowledge of the vote at issue in this case at all—he had not observed the vote at issue, had never seen original or copied ballots on the vote at issue, and had not seen a breakout tabulation of the votes at issue. (DeHann Deposition, 21, 24.) According to his own statements, the "independent election supervisor" certified the eight to six result after receiving the one-line statement giving the totals in the form of the certification letter prepared for his signa-

---

**2.** Although Defendants' attorney objected to the question asking whether DeHann could identify where in the attachment of the vote results for the Michigan Office Workers Supplement were reported on the basis that these documents were not DeHann's, DeHann indicated that this was the tally attached to his letter certifying the results earlier in the deposition. (DeHann Deposition at 17, 18.)

ture by an employee of the IBT, Todd Thompson. (DeHann Deposition at 21.) DeHann charged Defendant IBT $50 [3] for the half hour he spent "prepar[ing], sign[ing] and send[ing]" this letter, and gave his "Belated Congratulations!" in a handwritten note on his cover letter for the invoice. (Ex. 2 to DeHann Deposition, letter from DeHann to Carlow Scalf dated Sept. 3, 2003 and attached invoice).

Defendants have produced the following tally of the votes:

| Local Union Number | Total Ballots Cast | Yes Ballots | No Ballots |
|---|---|---|---|
| 299 | 9 * | 5 | 3 |
| 332 | 3 | 0 | 3 |
| 580 | 2 | 2 | 0 |
| 614 | 1 | 1 | [0] † |
| TOTAL | 15 | 8 | 6 |

\* One ballot marked "abstain." (Defs. Mt. For Summ. J. 11.)
† Although Defendants' brief places a "1" in this column, I presume that is a typographical error.

Plaintiffs offer the sworn declarations of Local 299 members Rick Miazga, Robert Bernard, Charlotte Howarth, Douglas Waxer, and Debbie Wyatt stating they voted "No" [4].

After Plaintiffs began to call into question the result of the vote, and after Harris had moved over to the IBT's Benefits department, Harris stated at her deposition that she was asked for the original documents and ballots. (Harris Deposition at 45.) According to her deposition, she had already given the original ballots and the fax from Local 580 to the legal division, but when she went back to her old desk to check for any other original documents, she found a mailed envelope containing Local 580's letter and ballots in an in-box, where she had not previously stored ballots. (*Id.* 45–6.)

## ANALYSIS

In addition to a claim that the Plaintiffs' evidence is not sufficient to withstand a motion for summary judgment, Defendants raise a number of other issues: Plaintiffs' standing to bring this case; Plaintiffs' entitlement to either an equitable or legal remedy; and whether Defendants Hoffa and Conder can be held liable as a matter of law. Because Defendants' success on any one of the these three issues could preclude the need to examine all or part of the evidence in this case further, I will address them first.

### I. Standing

■ Defendants argue that Plaintiffs cannot show a repeated or ongoing injury, and as such, do not have standing to bring this case, citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In *Lyons*, the plaintiff was alleging that he was choked by police while in custody. The Court reasoned that because the plaintiff could not show he was likely to be arrested again, he could not show that the same harm was likely to occur again and therefore could not claim injunctive relief. *Id.* at 102, 103 S.Ct. 1660. Here, in contrast, Plaintiffs can show that they are extremely likely have another

---

**3.** All of DeHann's work-related activity is through the IBT and local unions, for which he received, according to his own a rough estimate, $15,000 or $20,000 in 2003. (DeHann Dep. 15, 25.)

**4.** Presumably, Plaintiff McCuiston also voted no. In addition, Plaintiffs argue that the ballot Plaintiff Miller marked is not among those alleged by Defendants to be cast by Local 332. However, because the motion can be decided without considering these additional allegations, I will not discuss them here.

vote on a contract in 2008, and therefore risk having the exact harm occur to them in the future. In addition, as Plaintiffs are now working under a contract that was allegedly improperly ratified, Plaintiffs also allege a continuing harm in that sense.

Finally, the more relevant Supreme Court precedents would be those dealing with an interference with the right to vote by unions or by governmental election officials through miscounting or discrimination as to who is allowed to vote. In these cases, the Supreme Court has not had difficulty finding standing. *See, e.g., Local No. 82 Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000); *Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

■ However, Plaintiffs do not have standing to seek an injunction that would affect referenda in which they are not eligible to vote. The Supreme Court teaches that generally, parties may not assert the rights of third parties not before the court. *See, e.g., Kowalski v. Tesmer,* — U.S. —, — – —, 125 S.Ct. 564, 567–8, 160 L.Ed.2d 519 (2004). There are exceptions to this rule: when parties have a "close" relationship with the third party; when there is some hindrance to the third party's ability to litigate on his or her own behalf; and when enforcement against the litigant would impact third party rights. *Id.* at 568. None of these exceptions are alleged to be present here.

Therefore, I find that Plaintiffs have standing to bring this case, but do not have standing to seek an injunction that would govern referenda in which Plaintiffs are not eligible to vote, and accordingly DENY in part and GRANT in part summary judgment on this issue.

## II. Remedy

Defendants call into question this Court's authority to issue either a legal or an equitable remedy in this case. As discussed above, the only injunction this Court can issue would impact referenda in which Plaintiffs have a vote, and the remaining analysis will assume that the equitable relief is so limited. In their Complaint, Plaintiffs request a permanent injunction requiring any or all of the Defendants to "provide adequate safeguards to ensure the fair and accurate counting of ballots, specifically including the right of affected members to receive notice of where and when ballots are to be counted and to observe the counting of ballots" and a permanent injunction to require Defendants to "use their best efforts to persuade the employers to set aside, as void" the current contract and renew negotiations. (Compl. at 7.) In monetary damages, Plaintiffs request "compensatory and punitive damages". (*Id.*)

### A. *Monetary Damages*

#### 1. *Compensatory Damages*

■ Defendants argue that any compensatory damages in this case would be improperly speculative, and I agree. Damages cannot be awarded when the occurrence of damage itself is speculative. *See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931). Here, Plaintiffs' brief in opposition to the motion, as well as Plaintiffs' depositions, make it clear that increased job security was at the top of their list in terms of additional changes they would have sought in the contract. None of the Plaintiffs allege that they have lost their jobs as a result of the new contract. Therefore, to award

any monetary damage for this lack of additional job security could very well end up compensating Plaintiffs for a harm they have not yet suffered and indeed may never suffer. The rule against awarding compensatory damages when the existence of monetary harm is speculative therefore bars an award of those damages in this case. As a result, I GRANT Defendants' Motion for Summary Judgment on this issue.

## B. Requirements for Equitable Relief

■ Defendants argue that Plaintiffs have not met their burden and properly demonstrated the requirements for injunctive relief, namely irreparable injury.[5] Before delving into this further, I note that Defendants' argument appears to rest in part on a misunderstanding of my reasons for denying Plaintiffs' request for a preliminary injunction, and so I will begin by restating why I did so. At the hearing on Plaintiffs' Motion for a Preliminary Injunction, both parties represented to this Court that it was extremely unlikely that a new referendum would be held before this litigation would draw to a close. Therefore, a preliminary injunction regarding the proper conduct of such an election would have been pointless, since the question of a permanent injunction would be decided before injury from any future referenda would occur. As I hope this makes clear, such reasoning is in no way applicable to a discussion of whether irreparable injury

has been demonstrated for the permanent injunction.

■ Defendants argue that in order to show irreparable injury, Plaintiffs must be able to demonstrate that future referenda will be held in a walk-in manner as opposed to mail balloting. They cite no authority for this proposition, which is inherently difficult to accept. As my previous opinions in this case make clear, the heart of Plaintiffs' case is the allegation that ballots were miscounted, leading to an announcement that Plaintiffs' contract had been ratified when it had, in fact, not been. Ballot miscounting can occur after a mail-in ballot or after a walk-in ballot, since the counting of ballots has to occur regardless of how those ballots are cast. Since the alleged irreparable injury arose from the miscounting (irreparable injury to the right to vote) that led to the announcement the contract had been ratified (irreparable injury as Plaintiffs are now bound to a contract improperly ratified), if Plaintiffs can maintain the heart of their action by offering sufficient evidence to allow a reasonable jury to conclude that their ballots were miscounted, Plaintiffs have sufficiently alleged the requirements for both types of injunctive relief in this matter.[6]

■ Finally, I note that it is common for courts to issue injunctions governing the conduct of future elections when a demonstration of a violation of voting rights has been shown. *See, e.g., Chisom*

---

5. At the permanent injunction stage, the requirements for injunctive relief are success on the merits, irreparable harm, a balance of harms weighing in favor of the prevailing party, and public interest weighing in favor of the injunction. 42 Am.Jur.2d Injunctions § 14.

6. Defendant makes an additional argument that Plaintiffs are required to show a willingness of any or all employers to set aside the contract in favor of a contract more to Plain-

tiffs' liking to meet their burden for injunctive relief ordering that such a request be made. Plaintiffs are not required to make such a showing to demonstrate success on the merits, irreparable injury, a favorable balance of harms, or the public interest. Therefore, I fail to see the relevance of the employers' willingness to renegotiate. However, even if it were relevant to one of the latter two requirements, I am mindful of the old maxim that it doesn't hurt to ask.

*v. Roemer*, 501 U.S. 380, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991). Under Title I of the LMRDA, I have the power to issue appropriate relief, including injunctive relief, to remedy a violation, should one be found. *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 541, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); see also *Carothers v. Presser*, 818 F.2d 926, 931 (D.C.Cir. 1987). Therefore, there is no legal bar to the issuance of injunctive relief in this case.

### III. Individual Liability for Hoffa and Conder

Defendants Hoffa and Conder argue, largely without the benefit of a citation to any authority,[7] that "neither one can be individually liable in this matter." Therefore, I will quickly review the state of the individual union officer's liability under the three laws on which Plaintiffs rely.

■ As to the first count, dealing with the violation of voting rights, the LMRDA was clearly intended by Congress to allow suits against the officers of unions in order to remedy a pattern of a "disregard of the rights of individual employees, and other failures to observe high standards of re-sponsibility and ethical conduct," especially as it pertains to elections over contracts. 29 U.S.C. § 401(2)(b). I note that the Second Circuit has upheld findings of liability of a union officer for violation of 29 U.S.C. §§ 411(a)(1), (2), and (5). *Rodonich v. Senyshyn*, 52 F.3d 28 (2d Cir.1995).

■ As to the second count, a breach of the union's constitution in violation of the LMRA, union officers are proper defendants. *Wooddell v. Int'l Bhd. of Elec. Workers*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). Therefore, as long as Plaintiffs offer evidence upon which a reasonable jury could rely that Defendants Hoffa and Conder committed actions that violated the union constitution, both Hoffa and Conder can be liable under these counts.

■ As to the third count, however, as a general rule, in fair representation actions, individual union officers are not proper defendants, because they are generally immune from personal liability for actions taken within the course of their duties. II Howard Z. Rosen, Peter A. Janus and Barry J. Kearney, *The Developing Labor Law* Ch. 25.II.A.3, citing *Williams v. U.S. Postal Serv.*, 834 F.Supp. 350 (W.D.Okla. 1993), *aff'd sub nom. Williams v. Letter*

---

7. Defendants offered no citations to any authority in support of their arguments regarding the individual liability of Conder and Hoffa in their supplemental memorandum. In their first brief supporting the motion, Defendants offered only a single citation to an authority in support of any proposition regarding the individual liability of Hoffa and Conder. That citation is to *Sim v. New York Mailers*, 166 F.3d 465 (2d Cir.1991) in support of the proposition that interpretations of the IBT Constitution made by Defendants Hoffa and Conder are binding unless "patently offensive." (Defs.' Mt. for Summ. J., 8.) Defendants may therefore be interested in perusing the following cases: *Anderson v. Int'l Union, United Plant Guard Workers of America*, 370 F.3d 542, 550–1 (6th Cir.2004);

*United Food & Commercial Workers Int'l Union Local 911 v. United Food & Commercial Workers Int'l Union*, 301 F.3d 468, 478 (6th Cir.2002); *United Bhd. of Carpenters, Dresden Local No. 267 v. United Bhd. of Carpenters, S. Cent. Ohio Dist. Council*, 992 F.2d 1418, 1423 (6th Cir.1993); and *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir.1971), in which the Sixth Circuit holds that such interpretations are binding unless "fair or reasonable." Of course, the proposition is irrelevant to this action, since Defendants do not argue that the IBT Constitution allows votes to be counted as "yes" votes when they are in fact "no" votes. Even if it did, such an interpretation or provision would clearly be void as a direct contradiction of federal law.

*Carriers,* 35 F.3d 575, 1994 WL 461277 (10th Cir.1995). Here, Plaintiffs have not alleged that the actions of Conder or Hoffa were taken outside of their duties as officers of the IBT, and therefore, they cannot be held liable as individuals under the third count. Monetary damages and injunctive relief are available against the IBT. *See, e.g., Communications Workers of Am. v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988).

## IV. Evidence Against All Defendants

### A. Defendant IBT

■ Again, the heart of this case is the question of whether the contract at issue was ratified or rejected by the voters. Plaintiffs argue that they are entitled to summary judgment because Defendants cannot authenticate or provide a chain of custody for the ballots they offer as evidence that the supplement was ratified. Defendants argue that they are entitled to summary judgment because Plaintiff is relying on sworn declarations instead of depositions to allege the "no" votes outnumbered the "yes" votes on the Supplement.

I believe this is a question for the trier of fact, and must go to a jury. As the non-moving party, Plaintiffs are not required to depose their witnesses, and may rely on sworn declarations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because the sworn declarations together total more than enough votes to change the outcome, Plaintiffs have met their evidentiary burden. The truthfulness of those statements will be for a jury to decide. Likewise, it would not be appropriate to grant summary judgment in favor of Plaintiffs, since Defendants have presented paper ballots and a reasonable jury could infer that Harris' count was the one reported in DeHann's letter and represented in Defendants' tally. Again, it is up to a jury to

decide whether to make that inference and whether to believe the paper ballots are in fact the ballots cast by all voters. Therefore, summary judgment is DENIED as to the issue at the heart of this case.

### B. Defendant Hoffa

■ Plaintiffs admit no evidence shows Defendant Hoffa's "active personal participation in a fraud." (Pls.' Br. in Oppn., 10.) However, Plaintiffs argue Hoffa can still be held liable for the ballot miscounting because as president of the IBT, he was principally responsible for ballot counting procedures and the counting of ballots. The constitution of the IBT provides that the president appoints the members of the negotiating committees, which in turn are to set the procedures for submission of negotiated Master Agreements to the membership for ratification. (IBT Constitution Art. XII, § 2(d).) At any time, with the approval of the General Executive Board, the president can supercede the authority of the negotiating committee. (*Id.,* § 2(f).)

Despite this, I cannot find that Plaintiffs have offered enough evidence to withstand summary judgment as to Defendant Hoffa. Plaintiffs allege he "exercised his supervisory powers with reckless disregard for the integrity of the ballot counting procedures." (Pl.'s Br. in Oppn., 11.) While "reckless disregard" does not have a single legal definition, it certainly requires a showing beyond a mere failure to investigate. *St. Amant v. Thompson,* 390 U.S. 727, 730–2, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). To meet their burden, Plaintiffs would have to offer some evidence that Defendant Hoffa knew or should have known of the miscount; standing alone, Defendant Hoffa's decision to rely on Conder and other officers of the IBT for information as to vote outcomes and the conduct of that vote is simply not enough to

satisfy that burden. On this evidence, I do not think an inference of reckless disregard is a reasonable one to draw. Therefore, as to Defendant Hoffa, the Motion for Summary Judgment is GRANTED.

### C. Defendant Conder

 Plaintiffs admit no evidence shows Defendant Conder's "active personal participation in a fraud." (Pls.' Br. in Oppn., 10.) However, Plaintiffs offer evidence that Conder gave instructions for the conduct of the vote, oversaw the person who did the ballot counting, and oversaw the person who gave the count to DeHann. Therefore, Plaintiffs do offer evidence that Conder was personally involved in the counting of ballots, even if he himself did not count them. A finder of fact who found that even five members of Local 299 cast ballots marked "no" would necessarily find that at least two votes of the fifteen cast, or approximately 13 percent of the ballots, were miscounted. Such a huge percentage is *res ipsa loquitor* for gross negligence. Assuming such a finding, Conder knew or should have known that such negligence was occurring: he had the opportunity and responsibility to know that his instructions as to the conduct of the referendum were not followed by at least one union; that the independent election supervisor's certification of the vote was not based on the inspector's personal knowledge; and that the ballot count had been done quickly and without verification by a second individual. His orders governed key portions of the referendum that are relevant here: the conduct of the voting and the handling and counting of the ballots. Therefore, Plaintiffs have met their burden and summary judgment is DENIED as to Defendant Conder.

### CONCLUSION

For the reasons above, Defendants' Motion for Summary Judgment is DENIED

in part and GRANTED in part as to Defendants IBT and Conder. Summary judgment is GRANTED in favor of Defendant Hoffa.

**IT IS SO ORDERED.**